IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 7, 2012 Session

# DONNA BELLOMY v. AUTOZONE, INC.

**Appeal from the Chancery Court for Hamilton County**
**No. 05-1135      W. Frank Brown, III, Chancellor**

---

**No. E2011-00803-COA-R3-CV-FILED-APRIL 27, 2012**

---

The plaintiff in this case is Donna Bellomy.  The defendant is a prior  employer of hers, AutoZone, Inc.  In ***Bellomy v. AutoZone, Inc.***, No. E2009-00351-COA-R3-CV, 2009 WL 4059158 (Tenn. Ct. App. E.S., filed Nov. 24, 2009) ("***Bellomy I***"), we vacated, in part, a summary judgment dismissing the Plaintiff's entire complaint.  We held that the Plaintiff had created genuine issues of material fact with respect to her Tennessee Human Rights Act ("THRA") claims.   On remand, the case progressed through discovery and opening statements, following which the trial court granted a mistrial, holding that the Plaintiff had violated certain rulings made by the court on AutoZone's motions in limine.  The court later granted the defendant partial summary judgment and dismissed the constructive discharge aspect of the Plaintiff's THRA claims.[1]  In the same order, the trial court held the Plaintiff in civil contempt and ruled that the dismissal of the constructive discharge claim was also appropriate as a sanction for violating the court's rulings entered on AutoZone's motions. The Plaintiff appeals.  We vacate the judgment of dismissal and all other orders of the trial court inconsistent with this opinion and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Vacated; Case Remanded with Instructions**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Grace E. Daniell, Chattanooga, Tennessee, for the appellant, Donna Bellomy.

Stacy Lynn Archer, Chattanooga, Tennessee; Laurie M. Chess, Miami Florida; and Tracy E. Kern, New Orleans, Louisiana, for the appellee, AutoZone, Inc.

---

[1]The case is before the Court pursuant to the provisions of Tenn. R. Civ. P. 54.02.  The Plaintiff's "failure to promote" claim remains pending in the trial court.

**OPINION**

**I.**

The Plaintiff filed this action shortly after she was denied a promotion to the position of store manager at the AutoZone store in East Ridge where, according to the allegations in her complaint, she was the acting manager. A man, who allegedly was less qualified than the Plaintiff, was promoted to the position. The Plaintiff previously had made it known to a supervisor that she was interested in any store manager's position that came available in the Chattanooga area. One such position was filled in Red Bank in 2004, but the Plaintiff was not made aware of the opening until after it was filled. She later resigned immediately after being denied the promotion to manager of the East Ridge store. After her attorney contacted AutoZone, she was offered a job managing the AutoZone store on East Brainerd in Chattanooga but she declined the offer.

It is important to understand the procedural progression of this case through two orders of dismissal and now a second appeal. As this case came to us in *Bellomy I*, the trial court had granted AutoZone summary judgment and dismissed the Plaintiff's complaint in its entirety. In *Bellomy I*, we affirmed the dismissal of "various tort claims" but vacated "the grant of summary judgment on [the] Plaintiff's [THRA] claims." *Bellomy I* at *1. In our earlier opinion, we noted that "[w]hen rendering its judgment, the Trial Court analyzed each claim separately." *Id*. at *5. In its first order granting summary judgment, the trial court had identified two components of the THRA claims: constructive discharge and failure to promote. The trial court treated the constructive discharge component as being based entirely upon the failure to receive a promotion in 2005 to manager of AutoZone's East Ridge store. Upon concluding, in its words, that "a failure to promote, by itself, [is] not sufficient to constitute a constructive discharge," the trial court dismissed the constructive discharge claim. *Bellomy I* at *7. As to the failure to promote aspect of the claim, the trial court accepted AutoZone's explanation of why the Plaintiff was not promoted, *i.e.*, an alleged policy against promoting an employee to manage a store at which he or she already worked. Thus, in granting summary judgment the first time, the trial court held that

> (1) she was not eligible to be selected as store manager at East Ridge because she was employed at that store; and (2) Plaintiff did not suffer an adverse employment decision because she was offered a store manager position at the East Brainerd store. Finally, the . . . Plaintiff had failed to create a genuine issue of material fact as to whether [AutoZone's] legitimate,

non-discriminatory reason for not promoting Plaintiff at the East Ridge store was pretextual.

*Bellomy I* at \*9.

As previously noted, in **Bellamy I** we reversed the trial court's dismissal of the THRA claims. Our opinion included a lengthy discussion of the facts presented by the Plaintiff in opposition to AutoZone's motion for summary judgment, including (1) deposition testimony that in 1998 or 1999 her store manager had told the Plaintiff that "women should [not] be working in auto parts" and had spread rumors about the Plaintiff; (2) testimony that she was placed in the position of "commercial specialist" at one store but was not given the support to succeed in that position because she was a woman; (3) testimony that, after moving to the East Ridge store, she continually made her desire to be a manager known and that "several store manager positions . . . were filled by male employees even though [her supervisor Scott] Huddleston told her that generally there was no turnover [in store managers];" and (4) testimony of the particulars of her being denied the promotion at East Ridge, her resignation, and her being offered a job as manager of the East Brainerd AutoZone store. **Bellamy I** at \*3. After noting our obligation to view all the evidence in a light most favorable to the Plaintiff, we stated in **Bellamy I** as follows:

> [AutoZone's] primary argument is that [the] Plaintiff was not qualified for the East Ridge store manager position because she already worked at that store, and she simply quit before she officially could be offered the store manager position at East Brainerd. What troubles us most about this argument is that, at least according to [the] Plaintiff, she made Huddleston aware that if she was turned down for the East Ridge store manager position, she would resign her employment with [AutoZone]. Regardless of whether [the] Plaintiff actually told Huddleston that she felt she was being denied promotions because of her sex, there is no doubt, from the record now before us, that she made Huddleston aware that she believed she was qualified for a store manager position[2] and that if she continued to be over-looked for promotions, she would resign and keep her new job at the bakery. Despite knowing this, when [the] Plaintiff was told she was not being promoted to the East Ridge store manager position, Huddleston stood silent regarding the East

_____

[2]"We emphasize that not only did [the] Plaintiff believe she was qualified to be a store manager, [AutoZone] also admits that she was so qualified."

Braine[r]d store. Huddleston did not tell [the] Plaintiff either that she was being considered for other store manager positions or that she already had been selected for promotion to the East Brainerd store manager position.

Huddleston learned on April 8th or 9th that [the] Plaintiff had accepted a full-time job at McKee Bakery. As stated previously, [the] Plaintiff testified that she told Huddleston that she would resign at the bakery if she received a store manager position with [AutoZone]. Huddleston testified at deposition that when he told [the] Plaintiff on April 14th she was not being promoted to the East Ridge store manager position, he also told her that other opportunities were coming available and that she was being considered for those positions. This is inconsistent both with [the] Plaintiff's testimony and with [AutoZone's] previous statement that the reason [the] Plaintiff was not informed of her promotion to the East Brainerd store was because she had accepted employment elsewhere. If [AutoZone] considered [the] Plaintiff no longer eligible for promotion because she had accepted employment at McKee Bakery, it makes no sense for Huddleston to tell [the] Plaintiff on the 14th that other opportunities were coming available and she was being considered for those opportunities.

At a minimum, there is a fact issue as to why Huddleston, a district manager, stood silent if he already knew [the] Plaintiff had been selected for the East Brainerd store manager position given that: (1) [AutoZone] claims it wanted to wait until the East Brainerd manager was terminated before telling [the] Plaintiff she got that promotion; and (2) the former East Brainerd manager already had been terminated when [the] Plaintiff was told she did not get the East Ridge position. Drawing all reasonable inferences in [the] Plaintiff's favor, this supports an inference that Huddleston deliberately failed to provide existing information to [the] Plaintiff knowing she would quit. On the other hand, *if* the decision to promote [the] Plaintiff had not yet been made at the time of her resignation, this scenario supports an inference that the promotion to East Brainerd store manager was pretextual and after the fact.

[The] Plaintiff's constructive discharge claim is not premised solely on her failure to get the East Ridge store manager position. Rather, her claim is premised on *being qualified*, which is undisputed, and not being selected for store manager positions when *less qualified males* were selected. [The] Plaintiff claims this occurred in 2004 and 2005. Her claim also is premised upon comments pertaining to treatment of female employees in general. According to [the] Plaintiff, all of these events, when combined with her not being promoted to store manager at East Ridge, create intolerable working conditions. We find that [the] Plaintiff has created a genuine issue of material fact as to whether she was constructively discharged.

[AutoZone] argues that the decision not to promote [the] Plaintiff to East Ridge store manager and the decision to promote her to East Brainerd store manager was made by Scott Poole, [AutoZone's] regional manager, and not Scott Huddleston, [AutoZone's] district manager. [AutoZone] further argues that [the] Plaintiff has no proof of any discriminatory animus by Poole towards her. There are, however, questions of material fact related to these actual decisions including whether the decisions were made by Huddleston or by Poole. [The] Plaintiff testified that Huddleston told her that he, Huddleston, was considering several people for the position of store manager at the East Ridge store and that he would make his decision by the end of the week. [The] Plaintiff also testified that Huddleston told her at the end of that week that he had made his decision to promote a man, Shane Norton, as store manager at East Ridge. There also is a genuine issue as to when [AutoZone] made the decision actually to promote [the] Plaintiff to East Brainerd store manager. Additionally, if this decision was made before [the] Plaintiff left her employment with [AutoZone], there is a genuine issue as to why Huddleston, [AutoZone's] district manager, never told [the] Plaintiff the decision had been made to promote her to store manager at the East Brainerd store despite knowing full well that this would result in her immediate resignation.

Finally, we conclude that there likewise is a fact issue as to whether [the] Plaintiff's refusal to accept the East Brainerd store

manager position which was offered to her only after she had resigned and after her attorney sent a letter to [AutoZone] was reasonable. In other words, we cannot say that [the] Plaintiff's refusal to return to [AutoZone's] employment was unreasonable as a matter of law.

*Bellomy I* at \*12-13 (footnote in original; emphasis added).

We now move ahead to the actions of the trial court on remand. That court's memorandum opinion and order entered on February 2, 2011 ("the Second Dismissal Order"), provides a good summary of what happened between the time of our opinion in *Bellomy I* and the dismissal of the constructive discharge claim on remand. The Second Dismissal Order states:

> Upon remand, the parties continued their discovery. They also prepared for trial. Both parties filed motions in limine and the court held several meetings with counsel concerning the scope of evidence at trial. The trial of the case began on October 5, 2010. A jury was chosen. Counsel for AutoZone made several objections to Ms. Bellomy's attorney's opening statement to the jury. After AutoZone's opening statement, there was a break for lunch. After lunch, AutoZone moved the court to declare a mistrial on the basis that Ms. Bellomy's opening statement went far beyond the court's evidentiary rulings and would have "poisoned the well" by creating adverse impressions of AutoZone that were not relevant to the two remaining issues for trial. After hearing from Ms. Bellomy, the court agreed with AutoZone and declared a mistrial.
>
> On October 25, 2010, AutoZone filed its Motion for Civil Contempt. AutoZone alleged that Ms. Bellomy violated the court's rulings by remarks made to the jury in opening statements. AutoZone asked that the court dismiss Ms. Bellomy's complaint as [a] sanction for the contempt. In the alternative, AutoZone seeks recovery of $37,503.03 in attorney's fees and expenses it asserts were incurred as a result of the mistrial.
>
> Ms. Bellomy filed a Response to the Motion for Civil Contempt on December 2, 2010. Basically, counsel for Ms. Bellomy

indicated that while she understood the proof had been limited by the court, she understood that such limitations applied only to the failure to promote claim and not to the constructive discharge claim. Further, she pointed out that the Court of Appeals, in its opinion, had referred too [sic] many of Ms. Bellomy's factual allegations, beginning shortly after her employment in 1997 and had stated that Ms. Bellomy's constructive discharge "[c]laim also is premised upon comments pertaining to treatment of female employees in general. According to Plaintiff, all of these events, when combined with her not being promoted to store manager at East Ridge, create intolerable working conditions." *Bellomy v. AutoZone*, No. E2009-00351-COA-R3-CV, 2009 WL 4059158, at *18 (Tenn. Ct. App. Nov. 24, 2009). Finally, Ms. Bellomy asserts that there was no willful or intentional act to violate the court's orders.

In addition, AutoZone filed its Renewed Motion for Partial Summary Judgment on November 30, 2010. AutoZone sought the dismissal of Ms. Bellomy's claim for constructive discharge. The Motion was accompanied by a Concise Statement of Material Facts and 12 exhibits in support of AutoZone's motion. Much of the position of AutoZone's Motion is based upon Ms. Bellomy's applying for employment at McKee Foods Corporation ("McKee") before the Red Bank store manager's job was filled in November of 2004 and her acceptance of McKee's offer of employment before being told on April 14, 2005, she was not being promoted to store manager at AutoZone's East Ridge store, where Ms. Bellomy had served as Parts Sales Manager.

Ms. Bellomy responded on December 28, 2010, arguing first that this court did not restrict Ms. Bellomy's constructive discharge claim to evidence related solely to the promotion decisions in 2004 at Red Bank and 2005 at East Ridge. Further, Ms. Bellomy's Response noted that such a limitation, if there was one, would be contrary to the Court of Appeals' decision. Ms. Bellomy also filed a Supplemental Response on January 6, 2011, in which she argued that there were other discriminatory acts that occurred within the six months prior to Ms. Bellomy's

resignation that could support a claim for intolerable working conditions. . . . Both matters are now ready for resolution.

Because the Second Dismissal Order was based in part on the trial court's evidentiary rulings on remand, it is important before considering that order, to understand the parameters of the court's evidentiary rulings. They are contained in a memorandum opinion and order entered September 8, 2010 ("the September 2010 Order"). That order states in pertinent part:

> AutoZone wants to preclude Ms. Bellomy from introducing testimony or evidence (1) concerning any claims that were already dismissed on summary judgment, (2) of other alleged promotion decisions or employment decisions unrelated to the East Ridge store in April of 2005, (3) of what non-decision makers allegedly said, and (4) AutoZone wants to prevent Ms. Bellomy from alleging hostile work environment because it was not alleged in her original Complaint.
>
> First, Ms. Bellomy may not introduce testimony or evidence concerning . . . negligent retention, negligent infliction of emotional distress, and intentional infliction of emotional distress/outrageous conduct. Such evidence is not relevant to Ms. Bellomy's existing claims of failure to promote and constructive discharge and would constitute a collateral attack on the summary judgment ruling. Second, other alleged promotion and/or employment decisions unrelated to the East Ridge store in April of 2005 may be relevant to show constructive discharge and are therefore admissible. As held by the Court of Appeals, "Plaintiff's constructive discharge claim is . . . premised [partly] on being qualified . . . and not being selected for store manager positions when less qualified males were selected. Plaintiff claims this occurred in 2004 and 2005. . . ." Thus, the promotion decision of 2004 [at the Red Bank store] may be relevant to Ms. Bellomy's constructive discharge claim and will not be precluded.
>
> Third, AutoZone wants to prevent Ms. Bellomy from introducing alleged statements by non-decision makers. As AutoZone correctly points out, alleged comments by persons not involved with the decision to promote are irrelevant. . . .

-8-

In this case . . . there is a genuine question as to the identity of the decision maker. While AutoZone alleges that the decision maker was Scott Poole ("Mr. Poole"), Ms. Bellomy contends that the decision maker was in fact Scott Huddleston ("Mr. Huddleston"). Such a determination is more appropriately left for the jury; therefore, statements by Mr. Huddleston are relevant and may be admissible, in addition to statements by Mr. Poole.

Finally, AutoZone wants to prevent Ms. Bellomy from alleging hostile work environment. Ms. Bellomy has not asserted a hostile work environment claim in her Complaint and such a claim has not been the subject of this litigation. . . .

. . . The Court of Appeals never discussed a "stand alone" claim for hostile work environment.

This court acknowledges that the Court of Appeals mentioned on page 18 of its opinion that Ms. Bellomy's constructive discharge claim was also

> [p]remised upon comments pertaining to treatment of female employees in general. According to Plaintiff, all of these events, when combined with her not being promoted to store manager at East Ridge, create intolerable working conditions. We find that Plaintiff has created a genuine issue of material fact as to whether she was constructively discharged.

Even so, such other comments must meet the requirements of the Rules of Evidence before such can be used as evidence at trial. At this stage in the process, forcing AutoZone to defend itself against a hostile work environment claim would be unfairly prejudicial and would result in a series of mini trials encompassing Ms. Bellomy's entire work history.

For these reasons, the court finds that Ms. Bellomy may not introduce testimony or evidence concerning claims that were already dismissed on summary judgment, Ms. Bellomy may not

-9-

introduce testimony or evidence from individuals who were not the alleged decision makers in this case, and Ms. Bellomy may not introduce testimony or evidence regarding the claim of hostile work environment. Nonetheless, Ms. Bellomy may introduce testimony and evidence concerning AutoZone's failure to promote her in April of 2004 as it relates to her constructive discharge claim as well as statements made by Mr. Huddleston since there is a genuine question as to his role in the decision making process at issue in this case.

(Citations to the record and legal citations omitted.)

AutoZone also moved the trial court to exclude any evidence concerning promotions "except open store manager positions in April of 2005 in the Chattanooga, Tennessee District." This was based on the alleged policy of "not promoting an employee to store manager if that person was currently employed at the same store." AutoZone argued that evidence should be limited to "showing what stores the employees selected to fill the open manager positions had worked in immediately before they were promoted." The court held that "Ms. Bellomy should be allowed access to personnel files pertaining to any decisions made by Mr. Poole regarding store managers up to the time it was decided not to employ Ms. Bellomy as the East Ridge store manager."

AutoZone also asked the court to preclude "Ms. Bellomy . . . from eliciting any testimony or producing any evidence regarding any alleged harassment or discrimination towards other individuals and by individuals other than Scott Poole, the decision maker in this case . . . ." The court agreed with AutoZone that the testimony of Connie Hatten, apparently an alleged victim of racial discrimination, "should be excluded." As to witnesses named Tamara Clayton and Walter Arrowood, Autozone asked that their testimony be excluded "since neither allege[s] to have experienced or observed any discrimination pertaining to Ms. Bellomy or emanating from . . Mr. Poole." The court held that because of the dispute as to whether Mr. Poole or Mr. Huddleston was the decision maker in this case "Ms. Clayton and Mr. Arrowood's testimony will be allowed but limited to Mr. Poole and Mr. Huddleston." The court further limited Mr. Arrowood's testimony depending on the particulars of statements he, Arrowood, allegedly overheard.

Against this background, the trial court made the following comments in the Second Dismissal Order regarding AutoZone's renewed motion for summary judgment of the constructive discharge claim:

Here, AutoZone argues that Ms. Bellomy's reasons for leaving her employment with AutoZone had nothing to do with AutoZone or any intolerable working conditions created by AutoZone with the intent of forcing Ms. Bellomy to quit. In support, AutoZone notes the timeline of events, documented by various exhibits it offered in support of its renewed motion, as follows. First, Ms. Bellomy applied for a position with McKee on September 9, 2004. On September 13, 2004, Ms. Bellomy had a telephone interview with McKee. On October 12, 2004, Ms. Bellomy had an in-person interview with McKee. At this time, Ms. Bellomy wrote on an application form to McKee that she wanted to step down from a management position because she wanted "less stress" and to "g[o] back to school." These events occurred two months before [the] Plaintiff learned, in late November of 2004, that a Red Bank store manager position had become available and had been filled.

On March 24, 2005, Ms. Bellomy was offered a position with McKee. She accepted the position with McKee the same day she received the offer and agreed to begin her full-time employment with McKee on April 11, 2005 by attending a three-day orientation for which she was paid. On April 8, 2005, Ms. Bellomy asked Mr. Huddleston for time off from AutoZone in order to attend the orientation at McKee. It was at this time that AutoZone learned Ms. Bellomy was pursuing a full-time job with McKee. After completing her orientation at McKee on April 14, 2005, [the] Plaintiff asked Mr. Huddleston whether any decision had been made with respect to the East Ridge store. It was at this time that Mr. Huddleston advised [the] Plaintiff that Mr. Norton had been selected as store manager. Ms. Bellomy turned in her letter of resignation within hours of this discussion.

This court finds the above timeline of events extremely persuasive in disaffirming Ms. Bellomy's claim that AutoZone created intolerable working conditions with the intention of forcing Ms. Bellomy to quit. Ms. Bellomy sought employment with McKee an entire two months before she learned that the Red Bank store manager's position was open and subsequently filled and over seven months before she learned that she did not

receive the East Ridge store manager position. In addition, her proffered reason for seeking employment with McKee was that she wanted less stress and she wanted to go back to school. This court finds it difficult to believe that Ms. Bellomy was forced to resign due to any intolerable working conditions created by AutoZone with the intent of forcing Ms. Bellomy to quit when it was Ms. Bellomy who sought other employment before the earliest of the promotion decisions at issue in this case, specifically the Red Bank store manager position in November of 2004. Moreover, it would seem logical to believe that there would be "more stress" in being a store manager than being a parts sales manager.

Further, AutoZone asserts that Ms. Bellomy cannot base her constructive discharge claim on a failure to receive a promotion. The court agrees. . . .

\* \* \*

Ms. Bellomy, on the other hand, contends that AutoZone's Renewed Motion for Partial Summary Judgment should be denied as a result of the Court of Appeals decision in 2009. Specifically, Ms. Bellomy notes page 18 . . . which states:

> Plaintiff's constructive discharge claim is not premised solely on her failure to get the East Ridge store manager position. Rather, her claim is premised on being qualified, which is undisputed, and not being selected for store manager position when less qualified males were selected. Plaintiff claims this occured in 2004 and 2005. Her claim also is premised upon comments pertaining to treatment of female employees in general. According to Plaintiff, all of these events, when combined with her not being promoted to store manager at East Ridge, created intolerable working conditions. We find that Plaintiff has created a genuine issue of material fact as to whether she was constructively discharged.

-12-

Ultimately, Ms. Bellomy contends that her constructive discharge claim encompasses more than her failure to promote claim and further, that the facts surrounding her constructive discharge claim have not changed since the Court of Appeals rendered its decision. While Ms. Bellomy is correct that the facts known to the Court of Appeals have not changed since it rendered its Opinion, this court must point out that discovery continued after the remand and the Court of Appeals did not discuss the timeline of events relative to the promotion decisions made by AutoZone and Ms. Bellomy's voluntary pursuit of alternative employment. Accordingly, this court is unable to deny the persuasiveness of the timeline of events and the apparent contradictions in Ms. Bellomy's positions, even in light of the Court of Appeals' opinion. Further, this court specifically addressed the above portion of the Court of Appeals' decision in its September 8, 2010 Memorandum Opinion and Order and held that any alleged treatment of other females must still satisfy the Rules of Evidence in order to be admissible during trial, and further, that forcing AutoZone to defend against such evidence would be unfairly prejudicial and would result in a series of mini trials encompassing Ms. Bellomy's entire work history.

\*     \*     \*

After her resignation, Ms. Bellomy contacted an attorney, who then wrote to AutoZone. Based upon such, AutoZone offered Ms. Bellomy the store manager position at the East Brainerd store. Ms. Bellomy rejected the offer and maintained her employment with McKee. This action by AutoZone *could be viewed* as an attempt to work with Ms. Bellomy in an effort to resolve her grievance about not being promoted to store manager. . . .

Finally, Ms. Bellomy's additional allegations concerning the incident with Chuck Jenkins . . . and Mr. Huddleston's alleged repeated statements about the lack of turnover in store manager positions do not support her claim for constructive discharge in light of the contrary evidence in Ms. Bellomy's own deposition testimony. In regards to Mr. Jenkins' gender inappropriate comment(s) in 2000, Ms. Bellomy admitted that after

-13-

complaining to Mr. Huddleston, Mr. Jenkins was fired and that she was satisfied with AutoZone's response. In regards to the allegedly repeated statements about the lack of turnover in store manager positions, Ms. Bellomy also admitted in her deposition that the only conversations she had with Mr. Huddleston regarding this issue was in 2002 and in the Spring of 2005. Further, the court agrees with AutoZone that while failure to promote alone cannot be the basis of a constructive discharge claim, the failure to inform an employee of a position would also be insufficient.

As a result, this court finds that the above two allegations are insufficient to support Ms. Bellomy's claim for intolerable working conditions, as are the 2004 and 2005 promotions of other persons to be store managers. Additionally, Ms. Bellomy's attempt to rely on discrete acts that occurred years before she decided to quit her employment with AutoZone is inappropriate in light of this court's previous holding that such evidence would be unfairly prejudicial and result in a series of mini-trials encompassing Ms. Bellomy's entire work history. In further support, this court finds that there is no underlying claim and/or discriminatory act which would support Ms. Bellomy's claim of constructive discharge in light of ***Coffey v. Chattanooga-Hamilton County Hosp. Auth.*** No. 98-6230, 1999 WL 824870 (6th Cir. Oct. 6, 1999), which limits the amount of time that an employee has to resign after the last discriminatory act occurs in order to have an actionable claim for constructive discharge.

Ultimately, AutoZone has shown through its Exhibits and supporting documents that Ms. Bellomy's only claim in support of constructive discharge is based upon her failure to promote claim. AutoZone has cited several cases which specifically hold that a failure to promote, by itself, is not sufficient to support a claim of constructive discharge. Ms. Bellomy has not cited any cases which hold to the contrary. Further, AutoZone has convinced this court that Ms. Bellomy can point to no other discriminatory act to support her constructive discharge claim or show that AutoZone did anything to "force" Ms. Bellomy to

-14-

resign. For these reasons, AutoZone's Renewed Motion for Summary Judgment is granted.

(Citations to the record and some legal citations omitted; emphasis added.)

The Second Dismissal Order also dismissed the constructive discharge claim, "as a sanction for disobeying the court's evidentiary rulings and causing a mistrial." We will endeavor to summarize the reasons stated in the Second Dismissal Order for dismissing that claim as a sanction for contempt. Broken down into five components, they are as follows:

1. The September 2010 Order provided that the Plaintiff could "not introduce testimony or evidence regarding the claim of hostile work environment." In violation of this order, counsel "referred to the Highway 58 manager, Paul Conley, making some inappropriate remarks to [the Plaintiff] . . . in 2000."

2. The trial court held in its September 2010 Order that the Plaintiff's witness, Connie Hatten, could not testify. "During opening statement, Ms. Bellomy mentioned on three separate occasions that Ms. Hatten would be a witness for her."

3. "The court had ruled [in the September 2010 Order] that it was only the store manager position that could be discussed and not any other positions. [Counsel for the Plaintiff] violated the court's ruling in this regard by mentioning in her opening statement that Scott Poole and Tony Mullins were promoted from a parts sales manager . . . to assistant manager within the same store." "Further, the court . . . had ruled that qualifications were not the issue, as Ms. Bellomy was qualified, and that the various applicant[s'] qualifications were not going to be compared. [Counsel for the Plaintiff] told the jury that Mr. Norton, who was promoted to store manager at East Ridge, did not have the qualifications Ms. Bellomy had and she had his personnel file to prove it."

4. In the September 2010 Order, the "court had limited the failure to promote issue to the East Ridge store in April of 2005 and the Red Bank store in November of 2004. . . . [Counsel for the Plaintiff] in her opening statement said she counted 11 store managers replaced between June 13, 2004 and April 18, 2005. She also told the jury that Ms. Bellomy had not been promoted to store manager in eight years, so why should you continue to work there."

5. Following the mistrial on October 5, 2010, the Plaintiff sought clarification and guidance from the court as to what she could and could not introduce as evidence under the court's rulings on AutoZone's several motions in limine. After a hearing, the court memorialized its decrees by the entry of an order on November 24, 2010, stating, in part,

"[g]*enerally*, the Plaintiff may not introduce any evidence or testimony concerning promotions to positions other than store manager positions." (Emphasis added.) When the Second Dismissal Order was later entered on February 2, 2011, that order made specific reference to the November 24, 2010, order:

> This order [of November 24, 2010] *appears* to be based upon the hearing held on September 30, 2010. On page 50 of the September 30, 2010 transcript, the court ruled that "we're not going into other stores. We've got two stores, East Ridge, East Brainerd."

(Emphasis added.) Apparently, the trial court used its November 24, 2010, order to support its holding that the Plaintiff's reference at the trial on October 5, 2010, to promotions to assistant manager violated a ruling of the court (a) even though, as can be seen, that order was entered long after the mistrial was declared on October 5, 2010, and (b) even though the order of November 24, 2010, relied upon a statement made by the court as set forth in a transcript of a hearing on September 30, 2010, which statement (1) was made in the context of a discussion of the Plaintiff's damages and (2) did not expressly refer to assistant manager positions.

The trial court found in the Second Dismissal Order that the above offending statements were willful and prejudicial to AutoZone. It agreed with AutoZone that dismissal was an appropriate sanction; it further found that a monetary sanction was not appropriate. The court declined to dismiss the failure to promote claim. It certified the Second Dismissal Order as a final judgment pursuant to Tenn. R. Civ. P. 54.02. Both parties filed a notice of appeal. The Plaintiff filed her notice first.

II

The Plaintiff identifies the following issues:

> Whether the trial court erred in granting [AutoZone's] motion for civil contempt [and dismissing the constructive discharge claim on that basis].

> Whether the trial court erred in granting summary judgment in favor of [AutoZone] on [the] Plaintiff's claim of constructive discharge.

-16-

AutoZone raises, as an alternative issue in the event we do not find affirm the dismissal based on contempt, whether the trial court erred in declining to award a monetary sanction equal to AutoZone's attorney fees and costs.

## III.

A trial court's decision on a motion for civil contempt is reviewed under an abuse of discretion standard. *Flowers v. Tennessee Trucking Association Self Insurance Group Trust*, 209 S.W.3d 602, 610 (Tenn. Ct. App. 2006). The practical effect of this standard is that the

> discretionary decision will be reviewed to determine: (1) whether the factual basis for the decision is supported by the evidence, (2) whether the trial court identified and applied the applicable legal principles, and (3) whether the trial court's decision is within the range of acceptable alternatives.

*Id*. (citation omitted). "An abuse of discretion is found when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id*.

A trial court's decision on a motion for summary judgment is reviewed de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008). "[W]e are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id*. We are to make an fresh determination whether the requirements of Tenn. R. Civ. P. 56 have been met. *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997).

## IV.

The Plaintiff argues that the trial court's ruling – that she could not introduce evidence of a hostile work environment – amounted to a sua sponte dismissal of some of the allegations in the complaint and was in direct conflict with our holdings in *Bellomy I*. Paragraphs 11 and 13 of the complaint, respectively, state as follows:

> Plaintiff was denied equal opportunity in the terms and conditions of her employment with defendant on account of her sex creating a hostile work environment.

> Defendant failed to provide the plaintiff with a work environment free of sexual discrimination even after the plaintiff repeatedly complained of such behavior.

Our characterization in **Bellomy I** of the Plaintiff's action as a whole was that "Plaintiff claimed Defendant failed to promote her because she was a female and that Defendant otherwise created a hostile environment for female employees." 2009 WL 4059158 at *1. Plaintiff argues, however, that out of respect for the trial court's September 2010 Order, she was avoiding offering evidence that related solely to hostile work environment; rather, the "evidence was actually presented . . . to show intolerable working conditions in support of her claims for constructive discharge." We hold that this approach would be entirely consistent with our holding in **Bellomy 1** that the Plaintiff had created a genuine issue of material fact "as to whether she was constructively discharged" through her evidence of being repeatedly passed over for promotions to manager as well as evidence "pertaining to treatment of female employees in general." **Id**. at *13.

AutoZone contends that the Plaintiff's arguments regarding the various evidentiary rulings amount to a collateral attack, after the fact, on rulings that have become unassailable and that her challenge falls far short of the necessary showing that the trial court abused its discretion in holding her in contempt. We agree with AutoZone that "[a]n order is not rendered void or unlawful simply because it is erroneous or subject to reversal on appeal." The quoted language is verbatim from **Konvalinka v. Chattanooga-Hamilton Cty. Hosp.**, 249 S.W.3d 346, 355 (Tenn. 2008). We do not, however, agree that we cannot consider the propriety of the trial court's September 2010 Order in this appeal. The order entered on the various motions in limine was an interlocutory order that did not become subject to appeal as of right until such time as the court dismissed the "constructive discharge" portion of the case and certified the judgment as final pursuant to Tenn. R. Civ. P. 54.02. *See* Tenn. R. App. P. 9(a) ("[A]n appeal by permission may be taken from an interlocutory order of a trial court . . . only upon application and in the discretion of the trial and appellate court."); Tenn. R. App. P. 3 (a) ("In civil actions every final judgment entered by a trial court . . . is appealable as of right."). Because an interlocutory order cannot be appealed as of right, the appeal of the final judgment necessarily gives rise to the ability to challenge interlocutory orders that affect the judgment. *See* Tenn. R. App. P. 36(b).

We also believe that AutoZone attempts to oversimplify the situation. We perceive the Plaintiff's arguments, both to the trial court and now before us, to be not only that the trial court was in error on some of its rulings, but also that the trial court was acting in conflict with our holdings in **Bellomy I**. The effect of the trial court's rulings was to place counsel in the untenable position of zealously prosecuting an action using all of the evidence we had discussed in **Bellomy I**, in the face of the exclusion of all of that evidence except the

2004 promotion at Red Bank and the one at East Ridge in 2005. As the Plaintiff states in her brief, this placed her in the position of thinking "that there had to be some misunderstanding. Plaintiff would not have gone into trial on a constructive discharge claim believing that she was not entitled to present any evidence on that claim." We believe, and so hold, that the trial court's September 2010 Order, as applied in the Second Dismissal Order, was so obviously in conflict with our holdings in *Bellomy I* that, in the understanding of the Plaintiff and her counsel, it would necessarily leave a "reasonable basis for doubt regarding [its] meaning" so as to preclude a finding of contempt for its violation. *Konvalinka*, 249 S.W.3d at 356.

> A person may not be held in civil contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden. The order must, therefore be clear, specific and unambiguous.
>
> Vague or ambiguous orders that are susceptible to more than one reasonable interpretation cannot support a finding of civil contempt. . . .

*Id*. at 355-56 (citations omitted).

Before we identify the areas of conflict between the trial court's orders on remand and *Bellomy I*, it is important to understand the effect of *Bellomy I*. When this Court decided in *Bellomy I* that the Plaintiff had mustered the evidence to create a genuine issue of material fact as to whether she was constructively discharged from her job, that decision became the law of this case – one which the trial court was obligated to follow on remand. "The phrase 'law of the case' refers to a legal doctrine which generally prohibits reconsideration of issues that have already been decided in a prior appeal of the same case." *Memphis Publishing Co. v. Tennessee Petroleum Underground Storage Tank Board*, 975 S.W.2d 303, 306 (Tenn 1998). Our decision in *Bellomy I* also became the law of the case as to the *admissibility* of the evidence upon which we based our decision because "[t]he doctrine applies to issues that were actually before the appellate court in the first appeal and to issues that were necessarily decided by implication." *Memphis Publishing*, 975 S.W.2d at 306. "The substance of evidence . . . submitted by the parties to support and to oppose a summary judgment motion must be admissible at trial." *Davis v. McGuigan*, 325 S.W.3d 149, 168 (Tenn. 2010). Our decision in *Bellomy I*, thus necessarily determined, by implication, that the evidence upon which we based our decision was *admissible*. This includes not only the Plaintiff's interactions with Scott Huddleston regarding the manager positions at Red Bank, East Ridge and East Brainerd, as well as her resignation, but also interactions with male superiors such

as Richard Adair, lack of support of female sales personnel that is typically provided to males, and other evidence of "intolerable working conditions" and "comments pertaining to treatment of female employees in general." ***Bellomy I*** at *3-5, 13.

With this background, we can be more specific about the trial court's rulings on remand that are in conflict with our opinion in ***Bellomy I***. We will begin with the September 2010 Order. The trial court's order that the Plaintiff could not introduce evidence of a hostile work environment is in conflict with our acknowledgment in ***Bellomy I*** that the constructive discharge claim was premised, in part "upon comments pertaining to treatment of female employees in general" which, when combined with other events "create intolerable working conditions." ***Id***. at *13. We also note that the trial court stated that, notwithstanding anything we wrote in ***Bellomy I***, "any alleged treatment of other females must still satisfy the Rules of Evidence in order to be admissible during trial." This statement ignores the effect of the ***Bellomy I*** being the law of the case as to the admissibility of the evidence we discussed in ***Bellomy I***.

Moving now to the Second Dismissal Order, we also find conflict there with ***Bellomy I***. The trial court stated "that discovery continued after the remand and the Court of Appeals did not discuss the timeline of events relative to the promotion decisions made by AutoZone and Ms. Bellomy's voluntary pursuit of alternative employment." We do not question that discovery continued after remand, but we would note that we clearly discussed the importance of timing, including the importance of AutoZone's knowledge as of April 8 or 9, before the Plaintiff's resignation, that she had accepted a job at McKee; AutoZone's knowledge well before the decision with regard to the East Ridge store that the Plaintiff would resign if she was turned down for that promotion; and AutoZone's knowledge that the Plaintiff planned to resign her employment at McKee if she received the promotion at the East Ridge store. We also discussed the questionable aspect of Huddleston's testimony with regard to whether the Plaintiff was told she was being considered for the East Brainerd store when she was informed that she was not being given the East Ridge store and the timing of her being told she could have the East Brainerd store after AutoZone heard from the Plaintiff's attorney. The only thing that the trial court identified missing from the ***Bellomy I*** discussion that has been supplemented by discovery is the timing of the Plaintiff's applications and interviews with McKee. However, it should not have been a surprise to AutoZone, or the trial court for that matter, that the Plaintiff submitted an application to McKee sometime before she was hired. They should also not be surprised that someone who is in a hostile work environment will apply with another employer even before the employee makes the decision that he or she has no choice but to leave. We fully acknowledge that we are construing the facts and inferences in the Plaintiff's favor, but that is our obligation at the summary judgment stage. ***Martin***, 271 S.W.3d at 84.

Before leaving this discussion, we note the trial court's comments about finding "the above timeline of events *extremely persuasive* in dissafirming Ms. Bellomy's" constructive discharge claim. (Emphasis added.) As discussed above, **Bellomy I** is law of the case. Furthermore, the trial court's comments make it sound as if the court was weighing the relative strength of the Plaintiff's evidence when compared with that of AutoZone. A trial court must refrain from weighing the evidence at the summary judgment stage; any conflict at all in the evidence must be resolved against the moving party. **Martin**, 271 S.W.3d at 84, 87. Another example of impermissible weighing appears in the following statement in the Second Dismissal Order:

> After her resignation, Ms. Bellomy contacted an attorney, who then wrote to AutoZone. Based upon such, AutoZone offered Ms. Bellomy the store manager position at the East Brainerd store. Ms. Bellomy rejected the offer and maintained her employment with McKee. This action by AutoZone *could be viewed* as an attempt to work with Ms. Bellomy in an effort to resolve her grievance about not being promoted to store manager.

(Emphasis added.) The proper approach is as illustrated in our decision in **Bellomy I**, *i.e.*, construe the facts in the Plaintiff's favor to support the conclusion that the Plaintiff was offered the East Brainerd job as a pretext or afterthought to cover up the discrimination.

We also note that in **Gossett v. Tractor Supply Co.**, 320 S.W.3d 777, 785 (Tenn. 2010) the Supreme Court abandoned the "**McDonnell Douglas** framework" of shifting the burden of production at the summary judgment stage to an employee once the employer offers a "legitimate" reason for its actions. The Court characterized the new approach as a "totality of the evidence" approach compared to a "compartmentalization of evidence" approach which causes courts to "put on blinders." **Id**. at 783. We believe our approach in **Bellomy I** was more consistent with **Gossett** than the trial court's analysis.

Based on the erroneous findings and conclusions we have discussed, the court held for a second time that the constructive discharge claim was based solely on the Plaintiff's failure to receive a promotion. This holding is directly in conflict with our holding to the contrary in **Bellomy I** and thus cannot stand. The trial court erred in granting summary judgment in favor of AutoZone on the constructive discharge claim.

We will now discuss the specifics of the dismissal based on contempt. The trial court held the Plaintiff in contempt for referring to inappropriate comments allegedly made by one of the Plaintiff's supervisors in 2000. The sole basis for the ruling was that the Plaintiff was

ordered not to "introduce testimony or evidence regarding the claim of hostile work environment." We have already held that such a ruling was in conflict with **Bellomy I**. Even if the Plaintiff did not have a "stand alone" claim for hostile work environment, under our holding in **Bellomy I,** she was entitled to try to prove that a hostile work environment was part of the reason why she was forced to resign.

The trial court held the Plaintiff in contempt for saying that she was better qualified than Shane Norton who was made the manager of the East Ridge store instead of her. The court based its ruling on the fact that the Plaintiff was unquestionably qualified. The mere fact that the Plaintiff was qualified does not preclude her from showing that she was, in fact, *better qualified* than the male who was given the job. Furthermore, the language in the September 2010 Order does not prohibit a comparison of the Plaintiff's qualifications to those of the male who was given the job. The court prohibited one witness, Mr. Arrowood, from talking about the Plaintiff's qualifications because

> the court [held] that Ms. Bellomy's qualifications are not at issue. Both sides have conceded that she was qualified to hold a store manager position. Therefore, Mr. Arrowood's testimony on this matter is collateral and unnecessary.

There is simply no way the above order "expressly and precisely spells out" that any comparison of the Plaintiff's qualifications to the man who was given the job she wanted was forbidden. **Konvalinka**, 249 S.W.3d at 355. It was a clear abuse of discretion to hold that the ruling in limine as to Mr. Arrowood should have put the Plaintiff's counsel on notice that she could not compare the Plaintiff's qualifications with Mr. Norton's through any channel.

The court held the Plaintiff in contempt for stating that numerous persons had been promoted to assistant manager from other positions within their own store. The court held that such statements were in violation of its order that "only the store manager position . . . could be discussed and not any other positions." We have read the September 2010 Order carefully and conclude that, while it is possible to reach that conclusion, the language in the September 2010 Order by no means provides clear warning that any mention of assistant manager promotions is forbidden. The part of the September 2010 Order at issue relates to "AutoZone's Motion in Limine No. 2" which was "denied." The discussion was in the context of whether the Plaintiff could discover personnel files to be able to counter AutoZone's assertion that she was not qualified for promotion to manager at the East Ridge store because she worked in that store. Supposedly, AutoZone, or possibly Huddleston or Mr. Poole, had a policy of not promoting managers from within a store because it does not want a manager to be responsible for supervising former co-workers. The trial court held that the Plaintiff could have access to the "personnel files pertaining to any decisions made

by Mr. Poole regarding store managers up to the time it was decided not to employ Ms. Bellomy as the East Ridge store manager." Arguably, the court's ruling prohibited discovery of any personnel files not related to those persons in consideration for store manager. However, we do not think this is the kind of clear and unambiguous order that would support a finding of contempt.

Moreover, if the court's order is construed so broadly, we believe it was clearly erroneous and would have been subject to being misunderstood by a reasonable attorney. Evidence that employees are promoted to assistant store manager from lower positions in the same store is clearly relevant to whether AutoZone in fact had a policy against promoting managers from the lower ranks of the store they will manage. The fact at issue is whether AutoZone, or its local district manager, has decided that a person cannot be an effective supervisor of his or her former co-workers. If the Plaintiff can show that assistant managers are promoted over their co-workers, it becomes "less probable" that AutoZone had such a policy for managers. See Tenn. R. Evid. 401 (definition of relevant evidence). In short, we hold that insofar as the September 2010 Order restricted the evidence at trial to managers only, it was an abuse of discretion and less than clear that it also applied to assistant managers. We further hold that it was an abuse of discretion to hold the Plaintiff in contempt for mentioning in opening statement that persons were promoted to assistant manager from within their own store.[3]

The trial court held the Plaintiff in contempt for stating that "she counted 11 store man[a]gers replaced between June 13, 2004 and April 18, 2005." This was held to be in violation of the limitation in the September 2010 Order of "the failure to promote issue to the East Ridge store in April of 2005 and the Red Bank store in November of 2004." Again, the context in which the order was made is important. AutoZone had asked that the Plaintiff be prevented from offering evidence "of other alleged promotion decisions or employment decisions unrelated to the East Ridge store in April of 2005." The court was unwilling to go that far. It held that "other alleged promotion and/or employment decisions unrelated to the East Ridge store in April of 2005 may be relevant to show constructive discharge and are therefore admissible." Based upon the statement in *Bellomy I* that "Plaintiff claims this occurred in 2004 and 2005," the trial court specifically found in the September 2010 Order that "the promotion decision of 2004 may be relevant to Ms. Bellomy's constructive discharge claim and will not be precluded." In concluding its discussion of the issue, the trial court stated, "Ms. Bellomy may introduce testimony and evidence concerning AutoZone's failure to promote her in April of 2004 as it relates to her constructive discharge claim."

_____

[3]As we noted on pages 15-16 of this opinion, the trial court's specific reference to evidence of promotions "other than store manager positions" is contained in an order entered November 24, 2010, long after the court declared a mistrial on October 5, 2010.

Our analysis of this ruling is much like our analysis of the "assistant manager" evidence. The September 2010 Order can arguably be read to exclude any evidence other than the 2004 Red Bank promotion and the 2005 East Ridge promotion, but that is by no means clear from the language of the order. The order simply identifies evidence that will be admitted without saying exactly what will not be allowed with regard to promotions. Moreover, we are convinced that, to the extent the September 2010 Order excluded evidence of other manager positions that came open in the Chattanooga area in the 2004-2005 time frame, it was clearly in error and would have created confusion in the mind of most practicing attorneys. The Plaintiff had made her superiors aware that she wanted desperately to be a manager and that if she continued to be passed over she would leave. There is evidence in the record that she was not told of the Red Bank manager opening until after the position was filled. There is evidence that she was not even told of the East Brainerd opening as she tendered her resignation. Evidence of other manager openings in the same area in the same time frame, of which she was not told, would make it "more probable" that AutoZone did not tell her of the openings because they did not want a female manager. We hold that the trial court abused its discretion in holding the Plaintiff in contempt for statements in opening to the effect that eleven other manager jobs came open in the 2004 to 2005 time frame.

The only other basis of which we are aware for holding the Plaintiff in contempt is the mention of Mr. Hatten as a witness. The court clearly held in the September 2010 Order that Ms. Hatten could not testify. In the Second Dismissal Order, the trial court states that Ms. Hatten was mentioned in opening. Based on our review of the record, it was during voir dire, and not opening statement, that counsel for the Plaintiff mentioned Ms. Hatten's name to inquire whether jurors might know her. The substance of Ms. Hatten's potential testimony was not mentioned. Counsel stated as an officer of the court that she kept Ms. Hatten's name on her witness list so that she would remember to make an offer of proof and that the mention of her name to the jury was purely accidental and a matter of oversight. We agree with the trial court that Ms. Hatten was excluded by the trial court's ruling and that her name should not have been mentioned to the jury. However, in the absence of any mention of the witness's potential testimony, we cannot see how the mere mention of her name during voir dire would prejudice AutoZone. The trial court did not articulate a separate basis for this one violation. It merely held that all the violations together were prejudicial. As we have overruled the trial court regarding the other alleged contemptuous actions, we hold that, in the absence of evidence to dispute counsel's explanation of innocent oversight on her part, it was an abuse of discretion to hold the Plaintiff in contempt and dismiss her constructive discharge claim on this basis alone.

We have considered AutoZone's argument that the Plaintiff should be made to pay over $30,000 as an alternative to dismissal. We find no merit in the argument.

Before concluding, we wish to reiterated that we are not reversing the finding of contempt simply because we have overruled portions of the September 2010 Order. We acknowledge that a trial court's rulings must be obeyed even if they are in error. See ***Konvalinka***, 249 S.W.3d at 355. We are holding that, under the circumstances of this case, a reasonable person in the position of the Plaintiff and her counsel would not have known "exactly what actions [were] required or forbidden" given the background of our opinion in ***Bellomy I*** and certain ambiguities in the September 2010 Order. *See **id**.* at 355. We further hold that conflicts between the September 2010 Order and ***Bellomy I*** would have created a "reasonable basis for doubt regarding [the] meaning" of the September 2010 Order, even to the extent it was otherwise clear. *Id*. at 356.

V.

In many respects, this has been a difficult case for the parties, the trial court, and this Court. It is obvious to the Court that Chancellor Brown has expended a great deal of time in a sincere effort to ensure that both sides are treated fairly in this search for the truth. With all due respect to the chancellor, the Court believes that the interests of the Plaintiff and the Defendant will be best served by the assignment of a new judge to hear this case on remand. Accordingly, the trial court is directed to take the necessary steps to secure the assignment of a new judge to hear all proceedings on remand.

VI.

The judgment of dismissal of the trial court and all other orders of that court that are inconsistent with this opinion, including the finding of civil contempt, are vacated. Costs on appeal are taxed to the appellee, AutoZone, Inc. This case is remanded, pursuant to applicable law, for further proceedings.

_____
CHARLES D. SUSANO, JR., JUDGE

-25-